May it please the court, Anne Hester representing DeAngelo Whiteside. As we now know after Simmons, DeAngelo Whiteside never should have been sentenced as a career offender. That designation nearly doubled his guideline range and it increased his sentence by about eight years. Unlike ordinary guidelines, the career offender guideline is the result of a congressional mandate that sentences be at or near statutory maximum. And unlike ordinary guidelines, the circumstances of the offense, such as the type and amount of drugs, whether there were weapons or violence involved, and the defendant's role in the offense play no role in determining punishment for career offenders. The career offender error in Whiteside's case is cognizable on collateral review because it violates due process and it also is a fundamental defect that inherently results in a complete miscarriage of justice. Three factors combined here to prohibit the district court from sentencing Whiteside at or below the correct guideline range once it has designated him a career offender. Those three factors are post-Booker sentencing procedures that harness sentences to the guidelines, meaningful appellate review for substantive reasonableness, and in this case, an erroneous mandatory minimum sentence that prohibited the district court from sentencing Whiteside below 20 years for reasons other than substantial assistance. Under Hicks, that removal of discretion violates due process. But the court doesn't have to decide the merits of the due process issue here because as the panel majority recognized, Whiteside's sentence also is a fundamental defect that And the panel recognized this for two reasons. First of all, the panel properly recognized that career offender designation is not an ordinary guideline error. In addition to the differences that I've already outlined, career offender sentences treat all offenders alike, even when their offenses are not alike, by disconnecting the sentence from all offense characteristics. Doesn't our court in Pettiford and the substantial difference between what might be an ordinary evidence, ordinary error, and what would constitute a miscarriage of justice? A miscarriage of justice is something where the legal proceeding wasn't even worth the name. Well, the Supreme Court has never said that, Your Honor. The Supreme Court has specifically said that an error that arises after the conviction that makes the conviction itself invalid is a miscarriage of justice on the one hand. And on the other hand, in cases like Hill and Timorek, it's held that a procedural violation that didn't affect the outcome is not a miscarriage of justice. But there's a space in between. And Pettiford doesn't does not address that space either because in Pettiford, the question was whether the acusenance was invalid or not. But the petitioner in that case already had three other valid convictions. Well, but if it had been ordinary error, they wouldn't have used the very ramped up term miscarriage of justice. I mean, just and you and I agree that that is the standard. And it's not it's not error correction. It's a miscarriage of justice. It's the fourth prong of Olano. It denotes something really out of the And that is exactly what a career offender error is, Your Honor, because it labels somebody as a recidivist. And if that's incorrectly done, there is nothing to connect that person to the guideline range that's selected, because unlike every other guideline range, which which depends on the circumstances of the offense for career offender, the only circumstance in question is whether that person is a qualifying recidivist or not. So in this case, where Whiteside is not a qualifying recidivist, but but nevertheless, he got a sentence dealt that doubled his guideline range and resulted in about eight years more imprisonment. That is an extraordinary error, and it is a fundamental miscarriage of justice. So it it doesn't matter to you that the career offender guideline is advisory. It doesn't matter to you that the district court could impose the very same sentence upon remand. It doesn't matter to you that the district court did nothing wrong. It acted within its discretion, and it acted within its statutory authority. It doesn't matter to you that the government did nothing wrong, that the government broke no promises. It doesn't matter to you that there were no procedural infirmities or substantive errors at the time that the case was decided. You think it's still perfectly cognizable despite the fact that both the government and the district court did absolutely nothing wrong. That's a lot of questions there, Your Honor, and I'm trying to address each one of them without forgetting one, but if I forget one, please, please. No, I'm saying in that totality, if all of these things are correct, and it's still a miscarriage of justice, then we're going to have an awful lot of things constitute a miscarriage of justice, and it's not going to be limited to the career offender provision you seem to want to carve out because the career offender provision is a guideline. I don't see necessarily a limiting principle as opposed to a limiting statement. First of all, let me begin with addressing the court's statement that Whiteside's sentence was correct when it occurred because that is not true. His sentence was never correct, and the Supreme Court recognized this in Boosley. That is the case where the court held the Bailey rule was retroactive. Well, it was correct in the sense that it followed the law existing at the time, which was the Harp decision. But that decision was incorrect. But it wasn't correct at the time the district court was required to follow the law. No, I disagree, Your Honor. That decision was never correct, and that's what Boosley points out. When the court is interpreting a statute, even if it overrules prior precedent, all it is saying is what the statute has meant all along. Simmons is a case of statutory interpretation, and it overruled Harp and Jones, and it makes clear that Harp and Jones were never correct. Whiteside was not correctly sentenced at the time that he was sentenced. Well, then, at any time by that rationale, there's no limit to it because any time a district court follows the law and then there's a change in the law, you come back and say, well, there's been a change in the law. Therefore, the earlier law was never correct, or the earlier law was that the earlier decision was never correct. And it just, it seems to me, your response to me simply seems to me to just completely open the floodgates. If we take this open-ended view, we're going to be overrun. Well, I disagree, Your Honor, because this case, the rule that I'm asking the court to apply here is limited in important respects. First of all, it has to be a retroactive decision. And what the whether the decision was correct at the time it was imposed or not basically goes to the retroactivity decision that the court issued in Miller, deciding that Simmons is retroactive. And that's what the court was talking about in Boozley, too, when it pointed out that when the court interprets a statute, it's merely saying what the statute meant all along. But also, by limiting the rule to career offenders, that significantly limits who the rule would apply to. And there are valid bases for distinguishing career offenders from other guidelines errors, as I've pointed out. I don't know. I mean, the whole point was made that the guidelines influence sentences. And there are many, many guideline provisions that influence sentences. And some of them make a dramatic difference. That's true, but I'm not asking the court to impose a rule that all guideline sentences are subject to collateral review. The panel got it right when it imposed basically two restrictions on the rule. The first of all, the first rule, the first limitation is that the guideline error has to be extraordinary. And career offender satisfies that rule. It is extraordinary. It's completely different from any other guideline designation. But the second point is that, the second point is that the real limitations on post-Booker sentencing discretion recognized in Pew and reinforced by this court's post- Booker sentencing decisions have to be taken into account. You can't just ignore what Pew says about the post-Booker sentencing scheme harnessing sentencing decisions to the guidelines. And that system of post-sentencing review, both the requirement that the court start with the sentencing guidelines, that it enunciate any reasons for varying from the guidelines, and that this court then applies substantive reasonableness review, all of that limits the court's discretion. It's not a free-for-all. The court can't I still haven't heard anything from you that that indicates every time there is a change in the law subsequent to the sentencing and after the point of direct appeal, but any time in the future that there's a change in the law and we can get to the point of saying that it may have a quote significant impact unquote, then the district court has to do it again. And you know, I don't understand how we ever have any concept of closure or finality. I realize somebody some people don't like the word, but it's absolutely crucial to the functioning of a judicial system and you're going to have a tectonic shift if resources are directed to the extent that your rule opens up from trial and direct appeal into collateral review under such an open-ended standard, that even where the district court could do the very same thing, even where the district court acted within its discretion and within its statutory authority, that the district court has to go back and do it all over again. And there's no limit to that. It is limited your honor because it would only apply to career offenders and in this case the district court could not have sentenced Whiteside to a sentence at or below his got his correct guideline range in this case because it was limited by this erroneous mandatory minimum that cabined the district court's discretion to to go below the 20 years to reasons related to his substantial assistance. So it's incorrect to say that the district court could have imposed a correct a sentence in the correct guideline range it did not have that discretion. And it's also incorrect to say that if it's remanded the court could impose the same 210 month sentence when Whiteside's guideline range would would have been correctly at the time 140 to 175. Now because of minus two it'll be down to 120 to 150 months and he substantially assisted the government. So it's really impossible to conceive of reasons that the district court could give for varying upward to 210 months from that range considering the facts on this case. Ms. Hester over here you seem to have skipped over the equitable tolling issue and whether you're properly here in the first place. I would love to address that issue. Okay if you could then and frame it in the context under the requirement of Holland that there has to be an extraordinary circumstance that stood in your way and that it prevented a timely filing. What was the extraordinary circumstance that operated to prevent a timely filing? Here the extraordinary circumstances were binding circuit precedent rejecting the argument that Whiteside makes today. Okay what prevented a timely filing? Well and if we were to agree that the existence of pre-simmons law was an extraordinary circumstance what prevented timely filing here? Well let me continue because in addition. Well if you could answer my question and then then continue as you please but you have to get over the hurdle that it prevented a timely filing do you not? Yes but if but under Holland the the prevention doesn't have to be something that actually prevents the person from putting pen to paper and filing something in the court. It has to be something that prevented him from completing a meaningful. Talks about timeliness. It talks about. Prevented timely filing. Correct. Prevented timely filing in this case. Well the circumstances in this case were the lack of the Simmons decision plus a ruling in Powell that Kara Chury doesn't apply retroactively which makes this case very unusual. So anytime there's the case that that prevents your recovery it's futile and prevented a timely filing? No. The difference in this case is that there's binding circuit precedent in advance that makes that makes it futile plus a ruling by this court that the preceding cases Kara Chury does not apply retroactively. So what that means is well I'll use Troy Powell as an example that's the only example that the government provides of a post-conviction petitioner who filed before before Simmons. But he filed before Simmons and his motion was dismissed because Kara Chury was found not retroactive and he still has. There were a great many petitioners who were filing within a year of their final appeal notwithstanding the fact that Simmons that Simmons hadn't come down. There were I mean there were challenges to these there were challenges to these rulings well before Simmons came down. Those other petitioners were not prevented? Those actually the vast majority of those cases your honor were direct appeals not post-conviction petitions and there's a there is a big difference between a direct appeal and a post-conviction petition because an appellant. Not all of them were direct appeals and well and the point the point I'm making is that they were challenging HARP well before Simmons actually came down so just in point of fact how could that be a prevention and also how do you get around the language in Bellsley because I you know I think this is a threshold issue a statute of limitations is a threshold issue and if if the filing is untimely to sort of drift into the previous discussion we had about manifest injustice comes to seem kind of unnecessary and and pretty much like an advisory opinion and I don't understand how you get around this direct language from the Supreme Court which says petitioner also contends that his default we're talking here about cause and a procedural default as you know should be excused because quote before Bailey any attempt to attack his guilty plea would have been futile that argument this argument too is unavailable unavailing as we clearly stated in Engel futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time and the fact that if if we hold that adverse precedent is going to be prevent someone from filing again what's the this is opening up collateral attack to something I say again we're going to be absolutely overrun and it's not a matter of our administrative convenience it's a matter of taking the limited resources of a criminal justice system and shifting them to a significant extent from trial and direct appeal where they can do the most good because the case is fresher toward an endless series of collateral attacks where any change in circuit law or precedent can unleash a new set of filings because the old precedent prevented a timely filing I mean how unlimited can you get well first of all I disagree with the court that that a ruling in white side's favor on equitable tolling will result in a flood of petitions in fact I think that a contrary ruling will result in a flood of petitions because what that will do is it will tell petitioners that they have to challenge every existing precedent that might bother them in order to preserve their right to raise it later but they will do it in a timely way and that's what uh that's that's what congress wanted because this this decision became final in august of 2010 um Simmons came down in august of 2011 and you filed well over two and a half well over two years almost two years after the decision became final but suppose under your scenario Simmons had come down five or ten years later uh instead of roughly one year after your decision became final um under your theory all you have to do is file one year after the change not one year after the decision becomes final which is what how congress structured um this 2255 f but one year after the decision comes down that changes the law so if it comes down five or ten years later under your view you still have one year so it'll be six years later 11 years later when the filing is um is accomplished and what does that do to congress's idea that we might want to have some basic freshness in the um in the evidence when we when we decide these matters well i think it sounds like the court may disagree with the equitable tolling idea at all but holland versus florida approves equitable tolling in 2255 cases so that is the territory that we're working with you're talking about 2255 f yes which one well i'm talking about there's four alternatives there which one do you fall under no i'm talking about the court's decision in holland explaining that equitable tolling applies to the aedpa right but the court said that you had to prove that you were prevented from timely filing and i don't think you still answered why you were well vented from time this is not futility this is futility plus right i'm talking about holland though the precise language of holland on which you're relying apparently says that you have to show that you were prevented from timely filing and what i'm saying is that in holland the circumstances were not in holland here what here prevented you from timely filing i don't think you've answered that yet what prevented him from timely timely filing were the court's precedents clearly making it clear that his claim didn't have any merit and the court's precedent additional precedent that if he relied on territory that would not be retroactive and then he would then burn his one chance to file a 2255 if he filed based on a non-retroactive supreme court case he would no that just runs flat into these supreme court cases and also equitable tolling on a high this is a highly developed statute of limitations it's not just your ordinary statute of limitations which says two years whatever this statute of limitation was something that congress crafted it's highly reticulated it presents these four situations and when you say equitable tolling that's reserved for extraordinary circumstance light and prevention as judge keenan said is not a matter of unfavorable precedent it's a matter of the opposing party doing something that's classic equitable tolling where the actions of the opposing party not the lay of the land as to the precedent prevents you some kind of concealment or some kind of of foul play on the part of the opposing party but we don't have that here and that's generally what is meant by an extraordinary circumstance actually holland is just to the contrary isn't it exactly that's what i was about in holland florida did absolutely nothing to prevent holland from filing and in fact justice scalia's dissent in holland makes the very point that's just been made that there was nothing absolutely nothing that prevented mr holland from filing his own 2254 isn't that correct that's correct and the majority of the court in holland categorically rejected justice scalia's approach that's correct and as judge davis i think is um judge gregory pointed out in the panel majority opinion um in holland the question was whether holland's own counsel had prevented him from timely filing and typically the court infers that that's the defendant's agent so that should be an even more difficult case in which to a set of adverse court decisions that prevented um prevented white side from timely filing didn't the government waive the statute of limitations in some of those simmons cases in many many of them the court the government has waived the statute of limitations but they drew the line at career what how'd they pick and choose over which ones they were going to waive well miss ray may be able to answer that better than i but they waived it well you were in most of them yes they waive them for actual innocence cases where people were innocent of 922 g's cases where the sentence was above the statutory maximum in cases where the sentence uh where an erroneous mandatory minimum was imposed i'm sorry when you say above the statutory maximum how can a sentence be above it happened in a few aca cases your honor you mean the the non-enhanced maximum is that what you're right the correct i don't think any district judges in this circuit imposed sentences above the statutory maximum well they did in some they don't do it on purpose they did it in some aca cases that's where it came up because aca bumps the statutory maximum up so so that's the new statutory maximum right but where that was incorrectly calculated and the correct sentence was above the statute so so people got sentences of more than 10 years right when they should not have right and the government has waived limitations or appeal waivers in those cases right and agreed to relief correct thank you miss let's hear from miss ray may it please the court amy ray for the united states your honor the district court in this case properly declined to equitably toll the statute of limitations in this case and the district court in this case properly held that even if not barred by untimeliness mr white side did not present a cognizable claim for relief under section 2255 first as to the equitable tolling issue it does require extraordinary circumstances under holland versus florida that prevented the timely filing this court's decision in mentor versus beck established that futility is not enough as did bosley and their uh section 2255 f3 explicitly addresses when a new case decision when new authority reopens the limitations period and that is when there is a supreme court decision that is made retroactively applicable on collateral review so to equitably toll the statute of limitations under these circumstances would be to undermine a congressional determination as to when new authority is enough what kind of new authority reopens the limitations period so it isn't only that there were no extraordinary circumstances and there weren't and i i note that there were many defendants who did file timely make this argument within the time that mr white side could have made the argument as i was preparing for oral argument i suddenly i remembered i don't know why i didn't before the panel but in january of 2011 this court asked the parties in the michael trent this was after the panel argument in simmons asked the parties to actually look and see how many cases were pending that made the caraturi rosendo argument this was granted and the federal defenders filed a letter in the michael trent appeal noting that 62 cases at that time the defendants had made the caraturi rosendo argument so while it may have been futile to make it many defendants were making it and there was no reason why mr white side at that point he could have he he was within the one year limitations period he could have been making the same i think the one year expired in august of 2011 about two weeks before simmons issued if i'm not mistaken simmons was august 17th it was a day that i remember but yes i think it was august 3rd um when the limitations period ran for mr white and the whole point is it it's not one year after simmons it's one year after the conviction becomes final absolutely because if if congress intended it to be one year after simmons congress wouldn't have limited f3 the way it did congress limited it to supreme court decisions so you're saying there were some defendants who actually did argue the benefit of simmons before simmons became law that's right and they retained it so let me follow that now if what you're essentially doing is saying why wouldn't the defense council just argue every case that's out there pending that potentially could affect the sentence is that's what you're saying you betcha they have to and and the end result uh because we've had a lot of talk going about in terms of you know the fact that no one did anything wrong in terms of the the issue that we may get to uh but the end result is that we're dealing with an instance in which person's liberty have been deprived under the law that existed at that time but now we find that that law really was not the law should have been and the effect is being talked about quite a bit and that is the fact would be oh we're going to have a whole bunch of these cases coming up and we're going to give the judges a lot more work and the prosecutors a lot more work and yet the the ultimate the first determination is pretty much made it does affect it i mean that's done the only question is is does it affect it isn't that pretty limited i mean in a case like this i mean how much work would that be knowing now that doesn't apply you don't have to go back through the whole argue the whole thing you can pretty much accept well it does apply so uh your honor and and answer this because i thought i heard this do you waive the statute of limitations in some instances we do uh we the department has made the decision the department of justice to waive the statute of limitations so you control when people have are able to have their rights not the court you you make a decision there are two but if you chose not to waive it you could you have waived it here we could have we could have exercised our prosecutor you just didn't feel like it that morning the way we did not believe that he had presented a cognizable claim for relief under 22 55 the department looked at all the different claims if you would if you'd simply waive the one-year statute your theory of the one-year statute uh and if you're positioned on the cognizable claim on 125 is correct you're still going to win aren't you yes but we assert procedural bars the department made the decision in the way it looks like the government was picking and choosing on who gets the benefit of the statute waivers limitation waivers after the simmons case it is doesn't have doesn't really look that fair looks like you just do it a blanket waiver well it claims to be decided on their merit with all due respect it's it's the determination was made that we would waive the statute of limitations and other procedural bars which we did not have to do we could have asserted those every time but you did it on some cases we did it where there were a whole group of cases i remember i remember having some of them you may have been in them but but before you but you didn't bring them all no but we did it on a principled basis where they had presented that's what i'm getting at whether doing it picking and choosing can be a principled basis or whether you got to do a blanket waiver for it to be a principled waiver well i don't think we do i mean i think the department made the position decision that it was principled to waive the statute the procedural all the procedural defenses appeal waiver post-conviction waivers all of those when the petitioner had presented a cognizable and meritorious claim for relief and that was just by the the prosecutor exercise of prosecutorial discretion there are two bodies under the separation of powers who get to decide when someone can can assert a timely claim congress and then the executive has the prerogative to determine when to waive the statute of limitations and in this case the the attorney general the department of and directed the u.s. attorney's offices to waive the statute of limitations in cases where they were meritorious claims and at the same time we went through a very extensive process of determining what were meritorious claims but the statute of limitations is an affirmative defense yes and any party any litigant and you are a litigant in this situation has it within their discretion when to advance an affirmative defense and when not to advance affirmative defense and it's been going on for a long time that the department of justice establishes guidelines as to when they want to waive an affirmative defense as when they want to raise an affirmative defense and when they didn't and in this case you thought the underlying claim was not cognizable because it was an advisory guidelines calculation and because it was procedurally and substantively in accord with the law at the time and and as a result you you wanted to win the case and you asserted the timeliness as an affirmative defense which you have every right to do based on your assessment of the underlying of the underlying validity of the claim that's right sound like judge wickleson was at the meeting almost he was not but did a good job because you said amen to everything he said well but the question is that you're not just every litigant you're the department of justice absolutely and you're telling me you use principle and i'm using your word principle means to determine who would get justice you don't think you fall in the curtilage of your principles when you're sitting in a federal prison eight years more than we know and the law is wrong your honor it is not the department of justice that has determined when a cognizable claim has been it what constitutes a cognizable claim under section 2255 that is congress and what the department did was take it look an honest and careful look after simmons at what was cognizable and what wasn't and the truth is that under an advisory guidelines system it has to be a complete miscarriage of justice not any error not a typical guidelines error it has to be extraordinary and there has to be some limiting basis to understand what's different career offender errors occur they are actually not that extraordinary in terms of their nature they occur guideline errors occur congress made the determination that it had to be a complete miscarriage of justice and this court noted that it had to render the proceedings irregular and invalid there was absolutely nothing it was invalid council made a good argument which you said it's like hawthorn scarlet letter when you when you're a career offender and to say that just cavalierly that's just the guideline advisory no that is meant to put manacles on you with mandatory minimums and you don't get from under that at all and that's that's an incredible stigma and it can be and how do you become one isn't it correct that you could be a career offender with all of your previous or predicate offenses being just possession of cocaine not trafficking but just possession isn't that right not it well it depends in north carolina it would depend on what your prior record level was and but just possession you don't have to be a drug trafficker you could have in state state conviction possession of cocaine another possession of cocaine and then the federal government comes and pick your case out they said we want this one because you can be in a you can be a career that's an incredible label and category you go through and you not you but now we know he is improperly in that scarlet letter and he can't get it off his back so much to the point that this this minus two won't even apply to him so that eight years too long is now really 10 years too long probably in the calculation and you say in the department of justice you use principle determination and answer judge king's question you still haven't told me how you did it whether it was favorable is one day you're the good king or the good queen or i want to be generous this day and you say that but where is the court's authority under what was the great writ was one time and what equity means to have the power to do so i want you to ask why don't we have the power to do what your principles and the justice did because the aedpa does not provide this court with the power to correct anything other than a complete miscarriage of justice and we can disagree on what constitutes an extraordinary um error except that it is clear from this court sitting for eight years more than required your honor i first of all there this was under is that do you think that's extreme i agree that the if in fact he is sitting in prison for eight years longer that that is a very unfortunate and and significant i don't know if i would say it's not what's happening here but this is the problem he yes these these predicate convictions were never vacated and in the underlying proceeding the district court actually departed downward exactly from the career offender statute and said this is what i think the sentence should be there was a 20 percent downward departure but and what did the district court take into account it took into account the psi recommendation of a criminal history category of five which i haven't heard seriously disputed and it there is a long long record here of not just controlled substance offenses but obstruction of justice of violent assaults um and the district court even so departed downward said this is the sentence i think should happen probably going to give the very same sentence again which i think you have entitled to take into account you know people maybe don't maybe don't like the career offender statute unfortunately it's the law that's right and and that's the discretion and the district court in the sentencing transcript it not only took into account the recidivism but also the youthful character of this defendant and said that he was imposing a sentence consistent with the sentencing objectives of 35 53 a so this isn't a situation where we know for sure that this defendant is serving eight years and with all due respect judge gregory there was no there the career offender guideline does not result in a mandatory minimum it results in an advisory range that the court is free to accept or reject in accordance with the 35 53 a sentencing factors and sure there is a meaningful appellate review that this court made clear in in carter for example but that does not mean that there was a any lack of discretion here he had the court had the discretion to impose a fair sentence the court determined what that fair sentence was and imposed it and at a it didn't render the proceedings irregular and invalid miss ray over here yes nice nice to see you thank you uh who makes the oh you said the department of justice decided which to waive and which not to waive which defense is to assert which not including statute limitation where is that decision actually finally made do you make it no your honor i mean is it made in washington well i mean we in fairness let me say this after i will tell i will share with the court that it was it was a group we all convened we all talked but it was primarily a final decision it was uh main justice uh solicitor general's office was involved uh the attorney general's office was involved the u.s attorney's offices in all three districts in north carolina were involved you talk about categories of cases  you looked at those you looked at them individually too didn't you well sure see which ones you said you looked at them to see which ones had meritorious claims and you decided that this fellow didn't have a meritorious claim so you didn't waive it right but if you but if you're going to hit you came when you first got up there you said we win on the statute of limitations right and we win because his claims not could not it's not cognizable under section 2255 so you think you'd win on the merits i mean on the 2255 part as well absolutely well why didn't you look why didn't you go just let that be because rather than rather than imposing the uh the time limit bar and everything it looked like well the government's being fair-minded here they're letting cross the board the people take advantage of simmons if they're possibly entitled to for for one thing it it is not um it was our decision right or wrong that if there was a cognizable decision i mean make that clear i understand i'm i know how powerful the attorney general and the u.s attorneys are and you have the power to make that decision but but it needs to it needs to look right we also have to look right and it does it has a problem of looking right when you pick and choose well i respectfully disagree judge king and we we do respect the statute of limitations and we do assert it when we believe that it applies and in these this case where there's a cognizable claim that we thought okay in our discretion we're going to go ahead and waive them and allow these folks relief and those included um 922 g cases where there was an actual innocence of of the underlying conviction case it included cases under the armed career criminal act where there was an improper mandatory minimum and the defendant actually received an unlawful sentence i mean there were he's right flexibility in this he would want some flexibility in this thing you wouldn't want to say categorically to the department of justice you can never um you can never waive a an affirmative defense that that's not where you want to go that any litigant has some control over the the assertion or the non-assertion of a of an affirmative defense and it's entirely right for the justice department to to take into account individual circumstances such as a criminal record or such as an uh as a such as actual innocence or such as whether something is an advisory guideline um contention or whether something is a mandatory minimum contention you that's the way the system ought to in a rigid box i agree your honor and i think that in this case the department made a fair decision that if there was a meritorious claim we would not assert it miss ray i'm sorry yes right just can i follow up i was gonna ask you another couple questions about decision making sure in fact you claim and i and i accept that you made it some principal decision you're going through the cases or when you would waive and when you wouldn't wait you i'm just asking for my own clarification you didn't have the final absolute decision yourself as to when to waive and what when not to waive did you no i did not not as to categorically i mean we we have the main categories so now based on what you've heard here today are you going to take back to whoever makes that ultimate decision the recommendation that they either waive it for everybody or waive it for nobody i don't know that i would judge ed no i i think that it is a fair affirmative defense for us to argue and we do not think that the defendant would you understand the question no i do but i think that where the petitioner has a uh does not have a viable claim in our estimation our reading of the law our intellectual because i'm very this is the part of the policy i'm not understanding um in a circuit that had held that errors like this were in fact cognizable would you then waive the limitations period because in that circuit there is a meritorious claim how does this work what role does the court get to play i think that the answer judge here is i don't know other than uh the department's position continues to be and i think it's the legally correct one that these errors are not cognizable so uh so far there is no circuit that has finally determined that they are and because of that we don't really face that question but if we did i my guess is that we would continue to assert the statute of limitations because until the supreme court resolved that circuit conflict or until the administration took a different position on the cognizability of those claims and this is i guess a slightly related question so do you agree with what i think has already been said today that for our purposes today timeliness is sort of a threshold question and if we think this motion wasn't timely filed we're done so we will not actually have a chance to reach that cognizability question which might then in turn affect the department's position on waiver see what i'm saying i do although i i do but i don't believe it would actually affect the department's position on waiver and i want to be very clear about that because i think even if this court were to hold that these errors were cognizable the department does not believe that's true and with all due respect to the uh intellectual prowess of this court i think the department would continue to hold that until um until either their weight of authority with such but all you all you've done here all you have done here and i don't think there's foul play on the department of justice you've asserted an affirmative defense that was provided you by congress with respect to a claim which you felt was non-cognizable and you wanted to defeat and you wanted to you wanted to win the case you asserted affirmative defense the affirmative defense was one provided you explicitly by congress and you asserted in a in a case where you thought the underlying claim was non-cognizable and you as any litigant would would want to win and felt you should win as a matter of justice you felt you should win and that's all you've done and i don't see that it's malodorous yes your honor and um i i would note that just in terms of this conversation about what the department does and why this administration's decision to waive in any class of cases is in my experience is 10 years as a prosecutor fairly extraordinary the department made the decision to do that but they didn't do it without dissent and they didn't do it without some pretty close conversation about whether it was okay or what would happen if we start waiving in an entire class of cases but we did that and the decision was to do that because we thought that that was the just result and and at the same time combined with the decision was what does congress allow here what is a cognizable claim and the mandatory minimum question it was tough that was a difficult question and the answer ultimately was that we determined and in our estimation that it's a cognizable claim and this court has yet to made the decision to waive in this class of cases and they did it with um i can only tell you long and considered decision making and that's the problem counsel when you when you have a system like this i thought a big part of these sentencing guidelines and these things was to try to have equity as far as you could and now you have a carve out where you decide principle or otherwise we don't know what you do really i mean how it happens but we do know and in many cases where you've asserted when you don't assert them i don't know how you do that i take it what you said and i know you in terms of your integrity so i don't disperse it at all that's what you do but it happens but you might show mercy but you can't be just so what you're really telling me that we have instances of mercy but that's what courts are for justice and and that's why the great rate and equitable tolling is a part of this court's function not sitting on the other side of the curtain and just waiting on you to be merciful to someone it's a question whether or not just and the person sitting in prison for eight years more than that i don't believe that our hand is short and i i just don't believe that and here in terms of judge wilkinson brings up a point of finality here's what finality is now and i'm that's fine but but now we the commission is now going to give the minus two that's going to be about 46 000 cases that will be gone through the system so finale has gone out the window long time ago in terms of that sense now is the justice department is going to object to that courts having to re-sentence those people no we've we are uh it's that that i think it's essentially a done deal um and it and it and it's and you answer the question you're not going to object but let me see the irony of that here's the irony think about this i'm not against this but think about it 46 000 people whose sentence were correct then and still are correct are going to get relief but a person who said this we know is incorrect now the court can't do anything about it your honor section 35 82 c 2 i'm someone may have i'm sorry if i'm talking over someone i can't tell 35 82 c 2 provides defendants the ability to take advantage of a retroactively applicable guideline reduction that is congress 22 55 established by congress the aedpa provides a limited claim for relief for correction of certain errors and that statute also contains a statute of limitations and that statute of limitations explicitly addressed when new case law authority should reopen the statute of limit reopen the limitations period and it provided for supreme court decisions it did not provide that circuit court decisions no matter how dramatic no matter whether they completely overturned binding previous circuit court precedent that statute does not reopen the limitations period for new case law unless it is supreme court decisions whether we like it or not whether we think it is fair or not that is the decision that congress made so congress has carved out certain instances where a reduced sentence 35 82 c 2 is one of those instances but congress provides a statute of limitations in this case as well as a standard of cognizability that interpreted by the supreme court requires a complete miscarriage of justice and i guess in response to our sort of dismay that the department of justice is picking and choosing when it would assert a limitation that the ready response is you did the department did this as a matter of and it could have had a unilateral rule that was going to do it in every case the reason why the rule is our your procedure is articulated to us at least strikes me i speak only for myself as a little questionable is that you've made the call on the underlying claim a call that we may disagree with but we might agree with you on limitations um but i take your point that you in close cases you're not asserting limitations is basically what you're saying to us in in close cases in the department's view whether we think it's a close case or not is something else sure i mean i and i don't know that i would characterize them as close cases they were just you know it was a decision of of what's cognizable and what's not based on uh supreme court and circuit case law and the determination was made the career offender error is a guideline error there is a concern about there being no way really faithfully to distinguish between a guideline error in the career offender context and a 16 level enhancement in the illegal reentry context or a fraud loss calculation in a fraud context that could have equally severe consequences for a particular defendant we looked at both the sort of what constitutes an extraordinary error what is a complete miscarriage of justice and based on the case law and this was in this was a you know a legal reasoning not not discretion this was a an assessment that the section 2255 doesn't provide a claim for relief a cause of action for a defendant who suffers an ordinary guideline error and that the career offender error is just as in terms of the nature of that error in this particularly in the advisory guidelines now that we're post booker and this judge did exercise his discretion to to go below the applicable guideline range as he understood it that that is not a complete miscarriage of justice and and so because of that we made the determination that we would not waive the statute of limitations in that class of cases we're in order to hold this a timely filing we would have to do so much we would we would be up against 2255 f3 and its particular provision for when equitable tolling lies and when it does not so we would not only be up against but we would not only be up against an act of congress we would be up against explicit expressions on the part of a supreme court and bow in vows lee and in engel we would be up against uh explicit expressions about extraordinary circumstances being required and in addition uh we would be um courting separation of powers concerns if we tried to take as a basis for not allowed for saying that this is equitable tolling our view of how you should exercise your discretion and how you should not i mean prosecutors as a matter of separation of powers do exercise discretion you exercise discretion in whom to prosecute and in whom not the department of justice has detailed guidelines on that uh a usa is follow the guidelines but they also have some discretion in how they apply the guidelines um so all i'm saying is that to find this timely we're up against a classic notion of prosecutorial discretion we're up against a clear and detailed expression on the part of congress and we're up to an up against emphatic holdings of the united states supreme court and that's an awful lot to overcome yes your honor i see that my time is up i certainly could not um say it better or uh with any greater emphasis absolutely that the supreme court has made the decision that uh futility is not a reason to equitably toll the statute of limitations that a the case and in 22 55 f 3 establishes when new case law reopens the limitations period and and thank you your honor miss hester i'd like to begin where miss ray left off talking about boosley because it's important to note that in boosley what the court is talking about is procedural default not equitable tolling and the circumstances are different because in procedural default we're talking about whether somebody raised something in a direct appeal well the consequences of raising something in direct appeal are completely different from the consequences of raising them in a post-conviction action because there's no downside for someone i don't know i don't understand the distinction because if anything the consequences of a procedural default are quite severe you lose it and it would be very inconsistent to say that something um does not constitute cause for procedural default but oh my gosh it does constitute cause for a failure to file in other words that that whole position uh it just meets itself going and coming i mean to say something to say something doesn't constitute cause for procedural default would say oh yeah the very same thing does constitute cause here when there are consequences for the accused in both contexts well i agree that there are consequences for the accused in both contexts but when the government doesn't raise procedural default then that is not the standard that you look at the standard you look at is whether there's a miss whether there's equitable tolling um and whether there's a miscarriage of justice and it's not the same because a person under 22 55 if he raises a futile claim in his only 22 55 he's going to be precluded from raising that again he only gets one shot and that's entirely different from a direct appeal i'd like to talk to discuss for a minute um let me ask you a question how do we uh how do we issue a you don't have a coa here certificate of appealability you need one what's the constitutional issue in which you get a coa well the constitutional issue is the one that i led off with which is the question under hicks whether it's a due process well it's a due process claim whether the court i'm going to ask that because there was one issued by the panel majority but that panel majority decision's been vacated so you don't have one at this point correct you need to get somebody to issue a certificate of appealability or then we won't have any jurisdiction even right but all the claim has to be is debatable which is that reasonable jurors could disagree and it doesn't even have to be that any one person would vote but it still has to issue on the merits yes it does have to issue um but uh under hicks white side has made a debate it has offered a debatable constitutional issue and i would contend even one that he should prevail on on the merits um the court found uh basically ruled on that exact same issue in the narvaez case and granted it still has to be a timely filing yes there still has to be a timely filing to raise constitutional or non-constitutional issues yes or equitably told that's correct um i'd like to mention the 2255 f3 argument the argument that the fact that that provision um causes a cruel upon a retroactive supreme court decision that does not mean that equitable tolling doesn't apply um the court specifically addressed those those accrual provisions in holland versus florida and said nevertheless equitable tolling applies because because there's a presumption that equitable tolling applies and in order to defeat that presumption the statute must clearly clearly state that equitable tolling doesn't apply doesn't the specific control the general and f3 is very specific about when you have a change in law f4 addresses changes of factual circumstances f3 adjusts addresses a change in law that's what we have here and doesn't that specific provision addressing change in law control over general principles gauzy fuzzy principles of equitable tolling where congress has expressed itself specifically and addressed the precise point not under holland versus florida because the court was careful to point out in holland versus florida that those are accrual provisions and they aren't equitable tolling provisions and so that they don't displace equitable tolling and in fact the plain language of f3 doesn't even contemplate a decision made retroactively applicable by a court of appeals does it no it talks exclusively about law made retroactively applicable by the supreme court nobody suggests here that we're in that house no that's correct your honor and i also point out that the whole point of holland versus florida florida is that equitable tolling requires flexibility and it disfavors mechanical rules by my count justice bryer used the term equity about nine times in his majority opinion in holland right he says the great writ is steeped in equity i don't know how else you can read holland other than to at a minimum to leave open the opportunity for a court of appeals of the united states to take the court's lead and apply the reasoning of holland in a new factual circumstance if we're wrong the court will correct us that's right and this is um the court has to be able to address unforeseen circumstances and this really is a an extremely unusual circumstance where the court vacated its prior precedent and at the same time held that the cases leading up to that prior precedent did not apply retroactively which puts someone who's filing a 22 55 in a terrible position because there's there's no point in time when his claim will be considered exactly under holland under holland clearly you're looking at it this court might decide being in eight being in prison eight years too long doesn't matter or it's not important not severe enough but it cannot hide behind the fact it doesn't have the power to do so holland does not take away that power at all no a fair reading of it does not so this court can decide i don't care like the justice said well i didn't i decide i didn't want to waive that case because it didn't meet my principal standard but if this court doesn't do it it won't be because it didn't have the power because it doesn't have the will to do so i think holland makes that clear that's why justice bryan said that equity still exists the great writ still is here that's what federal courts do but to defer to some congressional scheme and and and take refuge behind that is a just and a clear misreading of holland absolutely thank you i will come down and come down to great council and take a brief recess
judges: Traxler, Wilkinson, Niemeyer, Motz, King, Gregory, Shedd, Duncan, Agee, Keenan, Wynn, Floyd, Thacker, Harris, Davis